### DRYFOOS v. SCAVENGER SERVICE CORPORATION.

No. 7204.

Circuit Court of Appeals, Seventh Circuit.

Oct. 25, 1940.

John A. Bloomingston, of Chicago, Ill., for appellant.

Joseph D. Ryan, Harold E. Friedman, and Howard C. Goldman, all of Chicago, Ill., for appellee.

Before MAJOR and KERNER, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

Plaintiff Dryfoos recovered a judgment in the District Court for $10,000 against the Scavenger Service Corporation, a foreign corporation for personal injury due, as he alleges, to the negligent conduct of employees of the defendant. Defendant appeals. The questions for review are:

1. Was there evidence of defendant's negligence justifying the submission of that question to the jury?

2. Was the plaintiff as a matter of law guilty of contributory negligence barring his recovery?

3. Was there a causal connection between the accident and the loss of sight in plaintiff's left eye?

4. Did the District Court err in the giving or refusing of instructions?

The facts as gleaned from the testimony of plaintiff and his witnesses show that at about seven o'clock in the morning of June 25, 1938, the defendant parked its garbage truck on the south side of 71st Street in the City of Chicago, about fifteen feet west of Jeffery Avenue and headed east; plaintiff walked from a restaurant on 71st Street located about one hundred feet west of Jeffery Avenue and approached the curb at or near the rear of the garbage truck.

Plaintiff was bent on crossing the street to the northeast corner of 71st Street and Jeffery to take a bus to his work and instead of going to the regular crossing at Jeffery Avenue, stepped into the street intending to cross diagonally behind the truck in question. Plaintiff saw a man on the tail gate of the truck and then glanced to his left and away from the truck to ascertain whether there was any approaching traffic from the west; as he glanced away from the truck, defendant's employee lowered a ladder that was hinged on the tail gate of the truck and it fell on plaintiff. The ladder weighing about fifty pounds struck the upper front part of plaintiff's head, stunning him and causing an abrasion from which he bled profusely. The ladder, some five feet in length, was hinged at one end to the truck and when not in use folded up over the rear of the truck, and when about to be used was swung backward until the upper end rested upon the street. Thus placed, it was used by defendant's employees in carrying garbage to be dumped into the truck. Defendant's attendant who lowered the ladder had his back to the sidewalk and did not see the plaintiff until the ladder hit him. Plaintiff was about three feet back of the truck and apparently under the ladder as it was swung backward. Plaintiff had seen defendant's garbage trucks before and saw the ladder on the rear of the truck on the day in question and probably knew its purpose. He paid no particular attention to what the attendant at the rear of the truck was doing at the time and had no knowledge or warning that he was about to lower the ladder until it hit him on the head. (Defendant makes much of the statement of plaintiff on cross examination that apparently the attendant was getting ready to lower the ladder when he saw him, but a careful study of the cross examination indicates that this was a conclusion of the witness viewed in an ex post facto light, and does not necessarily indicate that he at the moment had knowledge of defendant's contemplated operation or intended to be so understood.) It was a bright morning, plaintiff was walking and in no hurry as the bus he intended to take was several blocks away. The middle of 71st Street was obstructed by the Illinois Central suburban tracks and platform and plaintiff could not have crossed directly north, but would have been obliged to take a northeasterly direction un-

til he reached the regular crossing at Jeffery Avenue.

After his injury plaintiff was given first aid in a nearby drugstore where a doctor was called. He later on the same day went to his work as a meat cutter. He was employed only one day per week, but continued in such employment. He complained of severe headaches, and within three or four days after the accident began to notice spots in front of his eyes. He was examined by various doctors, including those representing defendant, and at and before the time of trial was concededly blind in his left eye as the result of a detached retina.

### Negligence of Defendant.

While defendant asserts in its brief that there is no substantial dispute in the evidence as to the manner of the accident, we find defendant's witnesses disagreeing in a number of particulars with the picture given by plaintiff and his witnesses. For example, at least one witness says plaintiff ran directly into the ladder, others that the ladder fell on him; some indicate the ladder was lowered slowly, others that it was permitted to drop with considerable force to the pavement. A substantial number of witnesses testified on both sides and the controversy arising from their testimony cannot be here detailed. It presented a most important question for the jury and for the trial court, but one not pertinent to our duties on review. The negligence with which defendant was charged was that it lowered the ladder in a careless and negligent manner without regard to the safety of the plaintiff and without any warning. We think the evidence presented clearly made this a jury question and the District Court rightly submitted such question to them for determination.

### Contributory Negligence.

The question of plaintiff's contributory negligence is likewise a question of fact for the jury unless the court can say as a matter of law that all reasonable minds must agree from the evidence that plaintiff was not in the exercise of ordinary care and that such failure contributed to his injury. Plaintiff entered the street at a place not ordinarily used by pedestrians, but it cannot be said that this fact alone bars recovery. He was rightfully in the street and defendant's truck was rightfully

in the street and the conduct of each must be viewed from the standpoint of what a reasonably prudent person's conduct would be under like or similar circumstances. Certainly, it was prudent for plaintiff to survey the street for approaching traffic from the west, because it was reasonably to be expected that there would be traffic in the street and plaintiff could not blindly proceed into its path. He was also near the garbage truck on his right, which truck was not moving but parked at the curb. Would an ordinarily prudent person expect some sudden movement at the rear of the garbage truck that would endanger his safety? True, he knew the attendant was at or near the rear of the truck, but could he reasonably have anticipated that the ladder was to be suddenly lowered to the street at the moment of his passing and without warning? Would the physical situation in which plaintiff found himself appeal to the prudent man as a place of great danger and a place to be avoided?

■ We need not answer these questions, but need only determine whether under all the circumstances they present proper controversial matters. If so, under our jurisprudence they were properly left to the jury for determination. Measured by the conduct of a reasonably careful and prudent person under the given circumstances can it be concluded as a matter of law that plaintiff's conduct was so unreasonable and so devoid of care for his own safety as to prevent his recovery? We believe not, but on the contrary conclude that this was a question for the jury.

Causal Connection between Injury and Loss of Sight in Left Eye.

Plaintiff claims that the blow which he received on the right frontal portion of the head caused a detachment of the retina of the left eye and his consequent blindness in that eye. In the determination of this most difficult question we must necessarily lean heavily upon the learning and experience of those skilled in the diagnosis and treatment of human ills. In view of appellant's most earnest contention that plaintiff failed in this branch of his case, we have studied with great care all of the medical testimony, as well as other evidence, in the record pertaining to this subject. It would not be feasible to here set forth the opposing contentions or even to attempt a digest of the proof bearing on this question. Many doctors were called

on each side, the plaintiff having readily submitted to examination on many occasions by those selected by defendant.

From all the medical testimony appearing in the record, both for plaintiff and defendant, and from all the lay testimony, facts and circumstances bearing upon the subject, but one thing is clear and that is that no one knows to a definite certainty just what caused the detached retina in plaintiff's eye, resulting in blindness. It may have been from disease, or it may have been from trauma, or both may have made their contribution. The medical learning upon the subject teaches that the condition may result from many different causes, trauma among them. It is certain that plaintiff experienced a traumatic injury that may have caused or contributed to the condition. Apparently, (though somewhat in dispute) he had none of the diseases prior to the injury that ordinarily cause the displacement of the retina. There is no evidence that he suffered other injury than the one complained of. Under such circumstances, is it completely unreasonable for the jury to conclude that the blow on the head caused the condition? Certainly a very grave question arises from the evidence, and a court bent on arriving at the exact truth is beset with doubt and misgiving.

■■ The law, however, is not an exact science, and its processes cannot always be measured with that certainty which we might desire. We should like to feel morally certain that no wrong is to be done by requiring the payment of damages, but this is not the degree of proof that the law exacts in a civil suit. There is substantial evidence here leading to the conclusion expressed by the jury's verdict, and under such circumstances our duty is plain. Even though we may disagree with the result reached by the jury we have no right to substitute our judgment for theirs on this question of fact. We are constrained, therefore, to hold that the record presents a jury question on the subject of causal connection.

Giving and Refusing of Instructions.

■ Under this assignment of error there is but one point deserving of comment in this opinion. Instruction number twelve, after defining to the jury the issues tendered by the complaint and answer, told the jury that if they believed from a preponderance of the evidence that the de-

fendant at the time and place in question was guilty of one or both of the acts of negligence, etc., that they should find the defendant guilty. The second act of negligence charged was that the defendant "carelessly and negligently released or let down the said ladder without regard to the safety of the plaintiff * * * and carelessly and negligently failed to give warning or signal of any kind of its intention to thus release or let down said ladder * * *." Objection is made that no rule of law requires a person lowering a ladder from the rear of a garbage truck to give warning or signal of his intention so to do. Of course, whether or not any duty would arise in this respect would depend upon all the facts and circumstances then and there present. We think this should have been made clearer by the instruction, yet this instruction when properly analyzed and when viewed in the light of other instructions given the jury, could not have been understood by the jury as directing them to find for the defendant on the mere naked showing of a failure to give a warning. It was the carelessness and negligence in this respect, if any, that warranted a finding against defendant, and whether such negligence existed depended on the circumstances present. While we are not to be understood as approving the form of this instruction, we do not believe that it constitutes reversible error.

The judgment of the District Court is affirmed.